No. 83-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LEONARD RAY ORTEGA,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

~~Hirst, Dostal, Withrow; John Dostal, Missoula, Montana~~
James Taylor, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

---

Submitted on Briefs: March 1, 1984

Decided: April 19, 1984

Filed: APR 19 1984

Ethel M. Harrison
---
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant, Leonard Ray Ortega, appeals from a conviction of robbery entered by the District Court of the Fourth Judicial District, in the County of Missoula, and the imposition of a 40 year sentence, with thirty years suspended, and a dangerous offender designation.

On December 29, 1980 the defendant, Leonard Ray Ortega, was charged with the offense of robbery, a felony, in the District Court of Missoula County. The defendant pled not guilty, was tried and found guilty. The sentencing judge designated defendant a dangerous offender and imposed a forty year sentence with thirty years suspended.

After the defendant's conviction on June 19, 1981, a Notice of Appeal was filed by his attorney and transcripts of the trial ordered. In February of 1982, upon closer review of the trial transcript, the defense attorney informed the defendant that in his belief there were no issues which merited an appeal to the Supreme Court. Upon written request and consent of the defendant the defense attorney withdrew from the case.

March 1, 1982 a second defense attorney was appointed to prosecute defendant Ortega's appeal. He concluded that the transcript revealed no meritorious issues and invited the defendant to suggest any issues which he considered appealable. In response to the issues raised by the Defendant, defense counsel explained why he believed they were insufficient to sustain an appeal. In April of 1982, the defendant's second attorney submitted a report to the Montana Supreme Court, stating that having reviewed the transcript and other materials from the case, he found no appealable issues. On April 7, 1982, this Court granted the

defendant ten days to file written objections to this report and to show cause why the appeal should not be dismissed as frivolous. When the defendant failed to show good cause for appeal, this Court entered a Per Curiam Order on April 29, 1982 dismissing Mr. Ortega's appeal for lack of an appealable issue.

The defendant appeared before the Sentence Review Division of the Montana Supreme Court on August 11, 1982. His sentence was reduced to twenty years, with ten years suspended but the dangerous offender designation was retained.

The defendant petitioned the District Court for Post Conviction Relief alleging improper dangerous offender designation and denial of effective assistance of counsel. The trial judge denied rescission of the dangerous offender status and on July 11, 1983 appointed a public defender to investigate the remaining issue concerning effective assistance of counsel.

The public defender concurred with the defendant's previous attorneys that there existed no meritorious issues for an appeal. However, he argued that the defendant was denied due process by the failure of the Montana Supreme Court to order the defendant's former attorney to submit a brief along with his "no merit" letter to the Court, as constitutionally mandated in Anders v. California (1967), 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396. The District Court ruled in favor of the defendant and ordered the district court file to be transmitted to this Court. Accordingly, the public defender filed the appellants brief outlining the issue which might arguably support an appeal.

During the evening of November 23, 1980, Bob and Loren Lutzenhiser left Luke's Bar in downtown Missoula. They

3

walked east along Front Street toward their parked car when they heard footsteps approaching them from the rear. Alan Hanson and the defendant walked past the Lutzenhisers, then turned and confronted them. Responding to Hanson's threat of being knifed, Loren handed Hanson the six pack of Rainier beer he and his brother had purchased at Luke's. Hanson then demanded money from Bob Lutzenhiser. During this confrontation defendant Ortega stood approximately two feet behind Hanson. Although Ortega remained silent, he taunted the two brothers by aiming martial arts kicks close to Loren's head.

Bob made an effort to end the entire episode. Careful not to turn his back on Hanson who had threatened him with a knife, Bob instructed Loren to continue to their car, while Bob returned to Luke's to buy more beer. Hanson allowed him to walk by, but Marshall Young, another of Hanson's companions, tripped Bob onto the sidewalk and proceeded to kick him in the head. Testimony indicates that Hanson and Ortega joined Marshall in this assault on Bob Lutzenhiser while the other two members of their gang fled. Loren drove his car onto the sidewalk disbursing the assailants and flagged down a policeman who happened to be patrolling the neighborhood on his regular duty. The officer summoned an ambulance to the scene and within minutes apprehended the defendant and his four companions parked nearby in Ortega's car. All five suspects were arrested and the car was impounded. Pursuant to a search warrant, investigating officers found a six-pack of Rainier beer on the floorboards of the back seat and discovered a wallet containing Bob Lutzenhiser's driver's license stashed beneath the driver's seat.

All of the suspects who testified for the defense agreed upon the afternoon's events which lead to the incident resulting in their arrests. Defendant Ortega, who was visiting from his hometown, Seattle, Washington, met the other four at the home of his aunt, Marshall Young's mother. They imbibed ample quantities of beer and wine. In the words of Marshall they consumed "eight to ten bottles" of wine in a couple of hours. Toward dusk they decided to drive around Missoula. Ortega admitted that he was the driver of the car at all times during the course of the evening. In Missoula, they initially went to the Top Hat where they drank more alcohol. The confrontation with the Lutzenhiser brothers occurred as these five were returning to Luke's Bar from the Top Hat.

The only issue presented upon appeal is whether the State produced substantial evidence that the defendant personally committed the offense of robbery.

Our scope of review is set forth in State vs. Graham (Mont. 1983), 40 St.Rep. 1499, 1503, _____ P.2d _____:

> "The test for the sufficiency of the evidence to support the judgment of conviction is whether there is substantial evidence to support the conviction, viewed in a light most favorable to the State. State v. Lamb (Mont. 1982), 646 P.2d 516, 39 St.Rep. 1021. The resolution of factual matters is for the jury, and if there is substantial evidence to support the judgment, this Court must affirm the decision of the jury. State v. Hardy (Mont. 1980), 604 P.2d 792, 37 St.Rep. 1. Disputed questions of fact and the credibility of witnesses will not be considered on appeal. State v. DeGeorge (1977), 173 Mont. 35, 566 P.2d 59."

Furthermore, the rule has long been established in Montana that use of circumstantial evidence is an acceptable and often convincing method of proving criminal intent. As we restated in State v. Pascgo (1977), 173 Mont. 121, 126, 566 P.2d 802 citing State v. Farnes, 171 Mont. 368, 558 P.2d 472:

5

"The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the particular case, this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence."

Pursuant to the statutory definition of "Robbery" 45-5-401, MCA, the state filed its charges of robbery against the defendant based upon two allegations that the defendant "inflict[ed] bodily injury" on Bob Lutzenhiser while the defendant was "in the course of committing a theft."

"A person commits the offense of theft when he purposefully or knowingly obtains or exerts unauthorized control over property of the owner and has the purpose of depriving the owner of the property." Section 45-6-301(1)(a), MCA.

The defendant admits that there is a possibility the jury may have convicted the defendant on the theory that he inflicted bodily injury on Bob Lutzenhiser in the course of stealing his wallet. However, the defendant alleges that the State failed in its proof as follows: the wallet, found under the driver's seat of Ortega's car, was not connected to Bob Lutzenhiser; there was no showing that the wallet was stolen. Defendant argues the State failed to prove theft and therefore the case of robbery will not stand. The State argues that any failure to show that the wallet was stolen was harmless error since undisputed evidence established the theft of the beer which was sufficient to fulfill the theft requirement. In response, the defendant maintains that the evidence clearly shows that Alan Hanson took the beer from the Lutzenhisers and the defendant never exerted control over or possessed the six-pack of Rainier at any time during the altercation.

The law is clear that "the actor need not take part in the overt act of the theft, or the actual taking, to be found guilty" of theft. State v. Hart, (Mont. 1981), 38 St.Rep. 133, 142, ____ P.2d ____. In Hart this Court affirmed the trial court's conviction of robbery, based upon substantial circumstantial evidence and concluded: "The chain of evidence is a series of circumstances: presence, diversion, silence, association and flight. These elements of the State's proof present a formidable and unbroken chain of facts and events. The evidence was sufficient, and the case properly submitted to the jury."

Applying the same principle to the case before us, we are convinced that the jury had more than ample substantial evidence to conclude the defendant was guilty. Undisputed evidence presented at trial established that the defendant spent the afternoon and evening of the crime in the continuous company of the other four suspects, one of whom was his cousin; that although the defendant was not the instigator of the crime, he did nothing to disassociate himself from the conduct of his friends, in fact, he acted in a menacing and threatening manner by aiming martial arts kicks close to the head of one of the victims. Although Bob Lutzenhiser did not directly identify defendant Ortega as one of his assailants convincing expert testimony reveals that the injuries on the face of the victim could have been inflicted by a high-heeled boot similar to the boots the defendant was wearing and not by a soft leather shoe like those Alan Hanson wore. Furthermore, the defendant is admittedly the registered owner and driver of the car in which all five suspects were apprehended and the six-pack of Rainier beer and the victim's wallet were discovered.

The jury considered all the testimony and evidence in conjunction with the defendant's version of the incident and concluded the defendant committed the crime. There was substantial evidence to support the jury's conclusion. Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

8